22-3072 United States of America v. Khan Mohammed, Appellants Mr. Swanson for the Appellant, Mr. Hurst for the Appellee Good morning, Counsel. Mr. Swanson, please proceed when you're ready. Yes, Your Honor. May it please the Court, Reedy Swanson on behalf of Appellant Khan Mohammed. The government proposes to keep Khan Mohammed in jail for the rest of his life based on a terrorism enhancement that is not supported by the law or the facts. The government relies largely on procedural arguments to keep that enhancement in place, but those procedural arguments are, in the end, illusory. And for that reason, we ask this Court to reverse the terrorism enhancement in this case for three reasons. First, applying the terrorism enhancement here violates the plain text of a congressional directive. Second, under any standard of proof, the District Court's fact findings here cannot survive clear error scrutiny. They make no logical or temporal sense, and they are directly refuted by the record. And third, the District Court's flawed fact finding is especially important because it applied the wrong standard of proof to this case. I'd like to start with that first issue, the congressional directive. In 1996, Congress directed the Sentencing Commission to amend the terrorism enhancement so that it only applies to a federal crime of terrorism, and it defined federal crime of terrorism as a specific list of enumerated offenses with an additional motivational element. Applying the terrorism in this case means applying it to an offense that is not a federal crime of terrorism, and there's no dispute about that. And so for that reason, applying the terrorism enhancement here violates the plain text of Congress's directive, the Sentencing Commission. So I don't know if it follows like the night follows the day in the way that you described it, and the reason I say that is this, that if you read the provision, Section 730, to mean that an adjustment relating to international terrorism only applies to federal crimes of terrorism, that's the adjustment that needs to be made, and the only way that the commission can conform the guidelines so that it only applies to federal crimes of terrorism is that the underlying offense has to be a federal crime of terrorism, then sure, your argument prevails. But if you read the provision to say you've got a guideline that relates to international terrorism, what we want you to do is change that guideline so it relates to federal crimes of terrorism, and then you just do what the commission usually does, is you figure out how to do that. But we're just telling you that it's misfocused right now because it's focused on international crimes of terrorism, and what we want you to do is think about federal crimes of terrorism. And if that's the way you read that provision, then it was, I think even you would, well, you can correct me, but I would assume that you would even say that they faithfully adhere to that because they did shift it away from international terrorism to federal crimes of terrorism. They just didn't go all the way to saying only an eviction of a federal crime of terrorism is enough. That's right, Your Honor, that is what the commission did, but that misreads the text, I think, in two different ways. First, it doesn't really account for the ordinary meaning of the word applies in the context of a legal application, right? Applies means it is used in that context, right? You apply it to something, you know, it comes from the sort of physical act of applying to a specific thing. And when you say that it applies to a federal crime of terrorism, then applying the offense, applying the enhancement to another offense just doesn't comply with the text. And second, you know, you kind of made the argument. Before you go to the second one, and just make sure you remember it because I want to hear it. But on the first one, if what the Congress is saying is right now, as I read the provision, it applies to international terrorism. That doesn't seem like a non sequitur to me. That just seems like Congress could just say when I when I read the guideline, it's applying to international terrorism. I want to change it so it doesn't apply to international terrorism. I want to change it so it applies to federal crimes of terrorism. Now you've cut the word only out, right? So it's not just that it needs to apply. I'll get to only in a second. But just putting only aside for now on the question of applies, which is where you are focused. It seems to me that it does. It doesn't work to say it's it's a guideline now that applies to international terrorism shifted so that it applies to federal crimes of terrorism. I see what you're saying. So I think what's happening there is you're saying when Congress says the chapter three enhancement. Right. So so we're taking the chapter three enhancement essentially as a given. And then we're adjusting it in some way in the rest of the Senate. And I think there's another couple of reasons why that doesn't that reading doesn't work either. And the first is when it says the chapter three enhancement, it's referring broadly to the entire enhancement. It's not subdividing. It's not picking and choosing pieces. It says the entire enhancement applies only to a federal crime of terrorism. And the other reason is that relating to clause that comes after it. So when it when Congress describes the the chapter three enhancement relating to international terrorism, the one thing I think the government and I both agree on here is that what Congress is doing was saying, take international terrorism out. So it doesn't really make sense to treat the entire phrase, the chapter three enhancement relating to international terrorism as a given. And then only apply whatever is there to federal crimes of terrorism. Right. So so what what Congress is saying is only applies to federal crime, terrorism. And your honor, I would also point you to the legislative history here, which is, I think, unambiguously clear that when Congress said only applies to federal crimes of terrorism, it meant upon conviction of those offenses. That's exactly what the final conference report said. And so, you know, even if you perceive some sort of ambiguity there about whether that the chapter three enhancement language captures all of it or just a piece of it. Your honor, the legislative history completely dispels that ambiguity. I think. What's wrong with what the force said about the legislative history? Your honor. Frankly, I have looked at it many ways and I don't understand how it could be expressing a condition that is just sufficient, but not necessary because the legislative history says only upon conviction of an offense. And, you know, in in in the way that that legal logic works only means necessary, not sufficient. And so, you know, the 4th Circuit says that in one sentence, it says maybe there's an ambiguity there. But your honor, I just I have no I can't understand how it's reading it that way. The 4th Circuit didn't explain it and the government didn't explain it in their brief either. And then what's wrong with the 4th Circuit says, what is that set of history about the text where the point is that why only still works for the commission? Is that otherwise there would be the danger that the amendment would conform, would would adjust the guidelines so that it applies not only to international terrorism, but also to federal crimes. But one thing that's interesting about the 4th Circuit's opinion is that it doesn't go that far. Right. Even the 4th Circuit can't bring itself to say the plain text here means what the government says. It says admittedly, the text is ambiguous and then it applies Chevron. Now, the government hasn't asked this court to apply Chevron. And we don't think you should for that reason. But even in the context of an ambiguity Chevron type analysis, this court has said over and over that legislative history is part of that step one interpretive toolkit that you apply before deference at step two. And so the 4th Circuit just doesn't account for the fact that even if you think the statute is in some way ambiguous, as it says it is, you should be looking to the legislative history. But I wasn't. And this is the last question I'll have in a series of my colleagues can chime in if they want to. But I, I didn't read the 4th Circuit to be applying Chevron. I thought what the 4th Circuit Chevron cited in the 4th Circuit. It doesn't cite Chevron, but it says it's ambiguous. And for that reason, we're going to defer to the commission's reasonable interpretation. But I thought what the 4th Circuit was saying was not that this is a provision that's ambiguous and we're allowing the commission's interpretation of the provision to govern. I thought what the 4th Circuit was saying was this is a charter to the commission, like lots of charters to the commission to go forth and develop a guideline. And the guideline, all the only guidance we're giving you is the guideline now talks about international terrorism. We want you to reconfirm the guidelines so that it talks about federal crimes of terrorism. And then you do it in the way that you usually act as a commission. In fact, so much so that we want you to use the procedures that you normally use when you do this kind of thing as a spelled out in the provision. And when you get that kind of charter, it's natural to ask, did the commission act within the confines of that charter? Which is to say, we look to see whether they reasonably exercised that charter. Not that we're doing a Chevron analysis, but we're basically saying that's just a charter to shift the provision so that it doesn't focus on international terrorism. It focuses on federal crimes of terrorism. And you just have to do that in a reasonable way. Well, even if you think that there's some difference between Chevron deference and how you've just described it, it doesn't I think it doesn't make a difference here. Because the 4th Circuit's starting point in its analysis is admittedly the statutory text is ambiguous. And it only ever if you read carefully, it only ever says the commission reasonably interpreted this way. So, mechanically, that that's the same as a Chevron analysis, even if it doesn't call it a Chevron analysis. But I think it does affect whether you bring into play legislative history. Because the way you were saying was that a step on a Chevron, you bring into play legislative history. And I guess if you view it as a charter to the commission just to implement a mandate, then it's just whether they reasonably did that. You don't think about legislative history at that point, because the commission has just a charter to implement the mandate. Your Honor, I'm not aware of any precedent that says that the commission has a sort of super power over over the interpretation of congressional directives beyond the interpretation power given to all other agencies. And I think that would be sort of an unusual result. And it would be particularly unusual because it would be suggesting that in this situation, the commission could overlook what appears to be extremely clear legislative history in favor of an interpretation that is not the one that Congress adopted. So, so I think that giving the commission that kind of power to sort of skip over your legislative history, we understand it. Ambiguous legislative history would not get you to the same result. Right? The thing that really matters here is that Congress speaks in in unusually clear terms about the fact that what it meant by only applies is on conviction of an offense that is a federal crime. I want to just ask you, it's a pet peeve of mine. The misuse of only only should actually be at the end of applies to federal crimes of terrorism only. That would that change your position at all? I don't think so, your honor, because the key verb applies. You know, I think what Congress is doing is it's modifying the word applies. And our argument is when it says applies, it means uses in that particular context. And so I don't think that in this particular situation, that that particular grammatical piece makes a difference to the meaning of the terms. What can I follow? I hadn't thought about that. It's interesting. What if what if the provision said so that the chapter three adjustment that applies to international terrorism applies to federal crimes of terrorism only? Three, can you repeat that one more time? Yeah. Sorry. What if Congress says, we want you to amend the sentencing guideline so that the chapter three adjustment that applies to international terrorism applies to federal crimes of terrorism only. I'm not seeing a distinction there, your honor. I think that because the word applies limits the universe of cases in which the enhancement is applicable, the word only is just telling you limited to only that subset. And that I think would be true regardless of whether you put the word only before the word applies or after the words. I guess what it does is. If if you view if you view the chapter three adjustment right now as applying to international terrorism. Then it tells you that applies doesn't itself require a conviction, right, because the provision right now talks about promoting or intending or. Yes, the 1994 version that Congress directed said involves or intended to involve or intended to promote. So we already know that as long as the conduct involves or intends to promote international terrorism, it's enough, even if the conduct itself isn't international terrorism. And the other thing that that that that interpretation would would raise that we haven't talked about yet is the recognition, I think, general recognition, including by the commission and its commentary that federal crime of terrorism is a category that is broader than the crime of international terrorism. And so it sort of is a little bit nonsensical to say, take this offense that in its given form and apply it only to a category of offenses that is broader than the government's point about state law. Yeah, the government hasn't provided an example of a crime that is a state law crime that would qualify as international terrorism. That is not also a federal crime and promote. It just have to promote international terrorism, right? Or promote international terrorism. Yeah, no. Yes, you're right. If you if you accept the government's theory of what's happening to the involves or intended to promote language, that that is true. Yes. And it does international terrorism, as I as I understand it, does encompass state is in state law in the statute somewhere. International terrorism wasn't previously defined. Or state law, state laws in the statute somewhere, right? Is that in the government side of provision that encompasses state law? That encompasses state law? Or am I? We can ask the government. I'm not sure exactly what you're referring to. But either way, it's not it's not a very it's not a very intuitive way of thinking about what the word only would be doing in that situation. That's the main point that we that we want to make. And again, it's not consistent with what Congress told us it was doing in clear terms. Let me make sure my colleagues don't have additional questions. We will give you time for rebuttal. Certainly, no questions on the other issues that we that we didn't get to. I don't believe so. And we'll, we'll certainly have time for rebuttal to get into it. But absolutely. Okay. Thank you very much. Thank you. I just want to make sure that we have Judge Rogers on and she's able to hear. We know that. Okay. I've been on from the beginning and before. And I can hear you and I can hear counsel. Perfect. Thank you. Thank you, Judge Rogers. Mr. Hurst. May it please the court, Ben Hurst for the United States. The district court properly applied the Section 3A 1.4 terrorism adjustment. First, the district court did not plainly err in failing to find conflict between Section 3A 1.4 as a sentencing commission promulgated in the 1996 anti-terrorism and effective death penalty act. The best place to start with this question is actually in the 1994. As part of the context of this promulgation. In 1994, Congress instructed the sentencing commission to amend the sentencing guidelines to provide an appropriate enhancement for any felony committed within or outside the United States that involves or is intended to promote international terrorism. This instruction, which led to the involves or intended to promote language in the guideline now, has three components. There's the triggering event. The triggering event is the offense. And as it reads now is an offense that includes relevant conflict in the guidelines definition. There is a predicate that is international. And then there is a relationship between the two. Involves or is intended to promote. There's three portions to it. Looking at Section 730. In 1996, Congress instructed the sentencing commission to amend the sentencing guidelines so that the Chapter 3 adjustment relating to international terrorism only applies to federal crimes. The best way to read this is to say, is to look at what is actually being modified by only. It's international terrorism. International terrorism is the category of predicate offenses that follows. Involves or is intended to promote. And the only, the work that the only is doing there is to stop the sentencing commission from merely adding federal crimes of terrorism to the pre-existing guideline. So if imagine that the statute, Section 730, had omitted the term only, it had just said, amend the sentencing guidelines so that the Chapter 3 adjustment relating to international terrorism applies to federal crimes of terrorism. In that case, the sentencing commission might reasonably have simply added federal crimes of terrorism to the guideline as it was written. The work it only does there is a changing function. It's excluding international terrorism from the predicate to which the guideline can apply. So is there something to the fact that the statute uses the word applies when it's talking about federal crimes of terrorism, but to use relates to when it's talking about international crimes of terrorism? I think the way that you're reading it is that what Congress says is, you've got a guideline right now that relates to international crimes of terrorism and adjust it so that it relates only to federal crimes of terrorism. That's a fair reading, Your Honor. I don't think it's in conflict with the position that we're asserting here. I think that what the relating to there is doing is just identifying for the sentencing commission what adjustment we're talking about. We're talking about the adjustment that relates to international terrorism. That was the title of that. Well, that would be done also. It said the Chapter 3 adjustment that applies to international terrorism. It would also tell you which one. That's true, although I think that's correct, Your Honor. I think that's probably right. I don't make a great deal of that distinction because neither of those things is amend the sentencing, the adjustment that relates to international terrorism so that it only becomes invoked when a defendant is convicted. Right. I mean, there's definitely clearer language that Congress could have used to accomplish what the challenger says. I mean, there's clear language that Congress could have used to accomplish what you say too. I guess the question is, you think basically, and I'm not saying this is right or wrong, but you think basically that relating to and applies are effectively the same thing in the statute. What Congress is saying is, you take this Chapter 3 adjustment that involves international terrorism and change it so that it only involves federal crimes of terrorism. Well, in that case, Your Honor, that would be actually a very different thing because involves is a term that appears in the 1994 Act and also appears in the guidelines. That's true. That would be a difference. So if it's just relates to, then keep it as relates to. What you're saying is, when it's saying the Chapter 3 adjustment relates to international terrorism, change it so that it only relates to federal crimes of terrorism. That's effectively what you think Congress said here. I don't. I'm thinking about that, Your Honor. I'm trying to see if I think if I see any distinction between the relates to. I really think the relating to is applying is using that word. The relating to is just an identifying function there. And applies is is doing some kind of changing function, really amending the predicate offenses to which the guideline relates by involves or intended to promote the triggering. Mm hmm. And to be clear, that's the approach that was adopted by Hassan when Hassan considered this very same argument was that what only is doing there is making sure that the sentencing commission doesn't just say that the guideline applies when the defendant. Commits where the offense involves or is intended to promote federal crime of terrorism or international. So that that that work is is being done there. We think in this case that the. Approach that's been adopted by all the courts that have considered this question, all the courts of appeals that have considered this question, they've all said, which is how many, how many? Well, Your Honor, we have one court, the Fourth Circuit, that has really done a lengthy explanation of and refutation of the defendants arguments here. We have two additional courts that have kind of implicitly reached that conclusion, either over a dissent that adopts the defendants arguments here or by rejecting district court that made these similar that accept these similar arguments. Although admittedly, in that case, the court didn't go on at length about its reasoning. But then we have a number of courts that have applied the intended to promote prong, have found that the guideline is applicable in a situation where the defendant wasn't convicted of an offense that qualified as a federal crime of terrorism. So the implication there, even though they weren't addressing a specific question that the defendant is raising here, certainly that goes to the question of plain air. And if whether the district court's failure to notice this to a sponte was a plainly erroneous, was a plainly erroneous error that the court should correct. Under your reading. So I see what you're saying about relating to only doing the work of telling you what it's talking about. So let's suppose the statute says amend the sentencing guidelines so that the Chapter 3 international terrorism adjustment only applies to federal crimes of terrorism. You think that's basically what it's saying? Because if it says international terrorism adjustment, that's basically the same thing as saying that adjustment that relates to international terrorism, which is to say the international terrorism adjustment. Yes, your honor. And I think and I think any number of these interpretations of what relating to is doing doesn't get you to what defendant needs here, which is a clear and obvious error. Just on the question of whether there's an error to begin with. So your your reading is that take this provision. That now encompasses international terrorism and adjust it so that it only encompasses federal crimes of terrorism. You can leave everything else the same because that's exactly what the commission you have to think that's OK, because that's what the commission did. Right.  I think I'm not encompasses seems to sweep a little broader than the work that relating to is actually doing there to me. What relating to really seems to you is just identifying for the commission, which would got on every time. Right. But I'm just talking about not the before, but the after, which is what does it look like with federal crimes of terrorism? And you have to think that what Congress said is you've got a guideline that relates to applies to. I'll stop. I won't use involves, but encompasses international terrorism. It's the international terrorism thing. I just make it a federal crime of terrorism thing. That. I think that is fair, Your Honor. I think that's why I don't understand why. Because that's exactly what the commission did. That's right, Your Honor. I think that's correct. I'm not I'm not being resistant to the premise. I'm just I'm trying to think to myself what difference that would be from what from what they got on or from what Section 730 actually says. The thing that is crucial, I think, is that none of those proposals do anything to remove or to suggest that you had to be convicted of that, which would be a pretty significant change from I mean, even the defendants does not seem to acknowledge this that I've seen. Even if you remove the intended to promote wrong, it still applies when there's no conviction because it implies to offenses where there was an involved or where the relevant conduct, which is what offense means under the guidelines. And it doesn't actually ever say convicted. And I don't think any of the suggestions that Your Honor is making get the defendant all the way to where he where he needs to go to show even that the at the even an error, much less a plain and obvious error. See, my time has expired. I'm happy to address additional questions. The court asked. Okay, we'll let you rest there, Mr. Hearst. Thank you. Thank you, Mr. Swanson. We'll give you two minutes for rebuttal. Yes, Your Honor. Thank you very much. Just a couple of small things to respond to. First, my friend referred to a couple of cases from the sixth and seventh circuits. Those didn't really take up the question at all. It's sort of striking the fact that they don't engage with the question at all. Second, I'd like to just address his suggestion that plain error applies here. We think there are a couple of different reasons why that's not true. First, the district court passed on this question at J 46 to 47. The court squarely holds that it believes the and for the enhancement applies to an offense that is not an enumerated crime of terrorism and cites some of these similar out of circuit cases that reach that conclusion without engaging with  So I think that's a positive here. Second, a J 468 in our memo. We argue Mr. Mohammed's offense of convicted does not constitute a federal crime of terrorism. And then we say, even if it's intended to promote, even if the intended to promote wrong applies, it is improper to apply here. And then we go on to explain why. So, so I think I didn't read either your that statement or the district court statement that you pointed to to actually engage with the district court. So I think that that specific issue, you're correct, was not we did. We did not cite the specific provision, but the Supreme Court has said, and you're not limited to the precise arguments you made below. But even if you think plain error applies, we have plain error here because Glover tells us that a plain text error is plain error. And it says even that that is true, even in the face of some of the headwinds, the government tries to turn up here, including a circuit split where there are circuits that have come out on the other side and including the. The the opinion in Glover looks to legislative history, which is what we're asking. Does that mean that any time a defendant makes an argument that they should win under the guidelines that every district court is supposed to know that what they need to do is not just analyze the guideline, but they need to go back and ask whether the guidelines consistent with some statute that no one ever paid close attention. And the argument was never made that by saying that we should win under the guidelines. No, we're telling you, look at the guideline, but then you also know that you should always look at every statute to make sure it's consistent with every statute that could bear on it to your honor. I don't think that's the right way to think about what plain error review is in Henderson. The 2013 case where the Supreme Court holds that it's plain error at the time of appeal, not at the time of trial. The Supreme Court says it's not a grading system for judges. The point is just to make sure that the clear law is clearly applied. And so that's the interest that we're that we're advocating here. It's not a matter of whether the court is supposed to go back and realize or a commentary on the district court's performance at all. Just a matter of making sure that when Congress has spoken clearly, that clear result is applied. And the district court has to know that there's something in question. And if if nobody ever tells the district court, the reason we think the guidelines improperly applied to me is that it's in conflict with some statute. Every argument is under the terms of the guideline itself, as opposed to saying the guideline actually has framed conflicts with the statute. If that's never presented to the district court, then and you still would say the plain error standard doesn't apply, even though that particular issue was never brought to the court's attention, that the guideline is in conflict with the language of the statute, then it would mean that a district court is expected to make sure every time it applies a guideline that a guideline is not in conflict with the statute, even if the defendant never makes that argument. I want to respond to a couple of things, I guess. First, the suggestion that the district court would have to do this and go back. I don't think I mean, as a practical matter, of course, it would be great, but that's not what we're suggesting. It's, again, not a commentary on the district court's performance. The point is just to make sure that the clear text that Congress enacted is what is in fact applied to the case. That's what the Supreme Court says in Henderson. Sorry, go ahead. But I don't understand. The question is whether the plain error standard applies, right? I think I'm just yeah. Okay. Yes. So yes, the argument you made, I think, is is a question about whether the plain error standard applies or not. But once the plain error standard applies, what matters is the plain text that Congress adopted and not correct. That I agree with. I guess I'm not talking about whether the plain error standard applies and on whether the same plain error standard applies in order for the plain error standard not to apply here. In other words, in order to reach the conclusion that either the objection was adequately preserved or it never needed to be preserved to begin with, then I think what you'd have to say is that even though the district court was never told there's a problem with this guideline because it conflicts with the language of the statute, that we would expect a district court to undertake that analysis, notwithstanding that the particular bone of contention was never flagged for the district court. There's one minor caveat to that that I would add, which is when the district court reaches out and addresses an issue, whether or not it's great. So even if you assume we didn't bring this issue, if you think that the district court reached out at 468, 46 to 47 and address this issue anyway, then that would not be the case because I think it would be reasonable to expect district courts to reach out when they've chosen to reach out and address an issue to do so thoroughly. That's true. And then the question is, did they reach this issue? Because the district court didn't say the issue I'm reaching is whether the language of the guideline is consistent with Section 730, which nobody thinks the district court said that, right? Because the district court never quotes 730 or talks about 730. That's right. Although the only thing I'll add is the district court does purport to construe the language of the guideline. So the text, the statutory text here, is reproduced in commentary number 4 to the guidelines. So it's not like the district court would have had to go back and comb through the public law of EDPA to find this. The text is right there in the guideline commentary that's printed with the guidelines. And the last thing I would add is we're just, we're not asking, there's been a lot of sort of what is this piece of the phrase, this piece of the phrase, this piece of the phrase mean? And our argument is just that the text as a whole is simply read. It says, do not apply the offense to an offense, only apply the offense to an offense that is a federal crime of terrorism. And doing so here means applying it to an offense that is not a federal crime of terrorism. Thank you. Thank you, counsel. Thank you to both counsel. We'll take this case under resumption.
judges: Srinivasan, Henderson, Rogers